IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO:

DR. ANTHONY CARUSO, P.A., a
Florida corporation, a/a/o Christena
L. Butala, on behalf of itself and all
others similarly situated,                          CLASS REPRESENTATION

      Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant.
_____/

## CLASS ACTION COMPLAINT

Plaintiff, DR. ANTHONY CARUSO, P.A., a/a/o Christena L. Butala ("Plaintiff" or "CARUSO PA"), on behalf of itself and all others similarly situated, brings this Class Action against Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("STATE FARM" or "Defendant"), and alleges as follows:

### Jurisdiction, Parties, and Venue

1. This is an action asserting class action claims for declaratory relief, injunctive relief, breach of contract and compensatory damages relief pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3).

2. The Plaintiff, CARUSO PA, is a Florida corporation providing chiropractic services with its principal place of business in Palm Springs, Palm Beach County, Florida, where CARUSO PA provided medical services to Christena L. Butala.

3. At all times material hereto, Christena L. Butala was a patient at Plaintiff, CARUSO PA, who is and/or was an insured or omnibus insured under an automobile insurance policy

providing personal injury protection ("PIP") benefits issued by the Defendant, STATE FARM, and who assigned her rights and benefits of said automobile insurance policy to Plaintiff, CARUSO PA.  This action is brought as a result of STATE FARM's breach of the terms of said automobile insurance policy, as more specifically set forth herein.

4.  STATE FARM is an Illinois corporation, doing business under the laws of the State of Florida, and at all material times, sold automobile insurance coverage subject to the "Florida Motor Vehicle No-Fault Law" or the "PIP Statute".

5.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the minimum jurisdictional requirements for this Court and because this is a class action in which Plaintiff, along with all of the members of the putative class, are citizens of Florida, a state different from the Defendant. Moreover, this is a class action for monetary, declaratory and injunctive relief the value of which in the aggregate exceeds $5,000,000 exclusive of all costs and attorney's fees, and the number of putative class members is at least one hundred (100).

6.  Venue for this action is proper in this Court because Defendant holds a certificate of authority to transact business in Florida, is registered to transact business in Florida, and is incorporated as a foreign corporation in Florida. Additionally, a substantial portion of the wrongdoing alleged in this Complaint took place in this District.

7.  Venue is proper in this District because the Plaintiff is a corporation doing business in Palm Beach County, Florida; the Defendant has offices throughout Florida including in Palm Beach County, Florida; the Defendant transacts business in Palm Beach County, Florida, and/or one or more of the causes of action set forth below arose and/or accrued in Palm Beach County, Florida.

8.  All conditions precedent to the maintenance of this action have occurred, have been

performed, or have been waived.

## NATURE OF THE ACTION

9.     This action seeks monetary, declaratory and injunctive relief based upon the Defendant's breach of its insurance policy by failure to pay the proper amount of reimbursements to the Plaintiff and the members of the Class for certain medical services provided to the Defendant's insureds.

10.     Specifically, Plaintiff, on behalf of itself and the members of the Class, seeks the determination that the Defendant engaged in an improper uniform business practice of failing to properly apply the deductible authorized under Florida Statute Section 627.739(2) when calculating the amount of personal injury protection benefits due to Plaintiff and all Class members, in violation of the Defendant's insurance policies and the Florida Motor Vehicle No-Fault Law.

## BACKGROUND INFORMATION

### Defendant's Insured

11.     On or about September 7, 2015, Christena L. Butala ("Butala") was involved in a motor vehicle accident, and as a result, sustained bodily injuries related to the operation, maintenance, or use of a motor vehicle.

12.     At all times material hereto, Butala was a contracting party and/or a named insured and/or an omnibus insured under an automobile insurance policy issued by STATE FARM, which policy was in full force and effect, and provided Personal Injury Protection ("PIP") benefits coverage as required by Florida law.

13.     At all times material hereto, Butala was assigned STATE FARM Claim number XX-XXX4-977 for all claims related to her September 7, 2015 motor vehicle accident.

14.     As a result of the injuries sustained by Butala, Butala sought and received

reasonable, related, and necessary medical services from CARUSO PA.

15.    On or about September 8, 2015, Butala executed an Assignment of Insurance Benefits, Release & Demand assigning all of her benefits under the subject policy to CARUSO PA. The purpose of the assignment was to authorize CARUSO PA to bill STATE FARM directly for the medical services provided to Butala, and to require STATE FARM to pay CARUSO PA directly at its home office.  In other words, CARUSO PA stepped into Butala's shoes and became a party to the insurance contract.  *See* Assignment of Insurance Benefits, Release & Demand attached hereto as Exhibit "A".

16.    As the assignee of Butala's PIP benefits, CARUSO PA billed STATE FARM for medical services provided to Butala.

17.    Plaintiff provided medical services to Butala commencing September 8, 2015 and billed Defendant $1,400 for services provided to Butala from September 8, 2015 through September 11, 2015.  Instead of applying its insured's $1000 deductible to 100 percent (100%) of the expenses, Defendant improperly reduced the total billed amount by first applying the reimbursement limitations provided in Florida Statute Section 627.736(5)(a)1.f.(I), and then subtracted the $1000 deductible.[1]

18.    The plain language of Florida Statute Section 627.739(2) required Defendant to subtract Butala's deductible from CARUSO PA' total charges before applying section 627.736(5)(a)1.f.(I)'s reimbursement limitations.[2]  As a result, Defendant failed to properly pay

---

[1] Plaintiff's total amount billed for dates of service 9/8/2015 – 9/11/2015 was $1,400. Defendant applied section 627.736(5)(a)1.f.(I)'s reimbursement limitations to the total billed amount first to calculate an allowable amount of $1,050.72, then subtracted the $1000 deductible from that amount, calculated eighty percent (80%) of that amount, and made payment to Plaintiff in the amount of $40.58 (i.e, $1,050.72 - $1,000.00 = $50.72 x .80 = $40.58).

[2] Defendant should have applied its insured's $1000 deductible to the total billed amount ($1,400 - $1000) = $400; and then applied section 627.736(5)(a)1.f.(I)'s reimbursement limitations to

Plaintiff an additional $196.57.[3]

19.     Notwithstanding STATE FARM's representations in its Explanation of Benefits, the subject payments were improperly reduced in direct violation of STATE FARM's insurance policy and Florida Statute Section 627.736.

20.     STATE FARM has issued policies like the one issued to Butala providing PIP benefits coverage to thousands of other Florida residents and has consistently paid improperly reduced amounts to Plaintiff and members of the Class as a result of its improper application of the deductible.

**Florida Motor Vehicle No-Fault Law**

21.     Since its adoption in 1972, Florida has operated under what is commonly known as a "no-fault" system for automobile liability pursuant to the "Florida Motor Vehicle No-Fault Law" in Chapter 627, Sections 627.730 through 627.7405 of the Florida Statutes.

22.     Under the Florida Motor Vehicle No-Fault Law, automobile operators are required to secure automobile insurance including PIP benefits coverage that provides a minimum of $10,000 in combined medical expense and lost wage coverage payable to the insured if the insured is involved in an automobile accident and suffers covered losses, regardless of fault. *See, e.g.,* Fla. Stat. § 627.736(1)(a).

23.     In 2007, the Florida Legislature adopted a permissive fee schedule which permitted insurance carriers to utilize the Medicare Part B Participating Provider fee schedule as a per se

---

calculate the allowable amount. This proper application of the deductible would have resulted in a total payable amount to Plaintiff of $237.15 for the dates of service at issue. (Allowable amount not impacted by the deductible = $296.44 x 80% = $237.15). Please note that this calculation reflects the allowed amounts for dates of service not affected by the deductible included the proper fee schedule reduction for CPT codes 98940, 98941 and 98942 without an improper 2% reduction where applicable.

[3] *See Progressive Select Ins. Co. v. Fla. Hosp. Med. Ctr.,* 42 Fla. L. Weekly D2455 (Fla. 5th DCA November 17, 2017).

determination of the "reasonable" amount for medical services.  Florida Statute Section 627.736

sets forth various fee schedules but the one applicable for the services material to this action is the

Medicare Part B Participating Fee Schedule, which is the formula to be used pursuant to 42 U.S.C.

§ 1395w(b)(1).

24.     Defendant, at all times material, has elected to adopt the fee schedule permitted by

Section 627.736, Florida Statutes, into its policies, and has asserted that it provided adequate notice

of the election to use the actual fee schedule.[4]

25.     The Florida PIP Statute was amended in 2014 to incorporate the fee schedule for

the payment of claims as follows:

**(5) Charges for treatment of injured persons.**

(a) A physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for a bodily injury covered by personal injury protection insurance may charge the insurer and injured party only a reasonable amount pursuant to this section for the services and supplies rendered, and the insurer providing such coverage may pay for such charges directly to such person or institution lawfully rendering such treatment if the insured receiving such treatment or his or her guardian has countersigned the properly completed invoice, bill, or claim form approved by the office upon which such charges are to be paid for as having actually been rendered, to the best knowledge of the insured or his or her guardian. However, such a charge may not exceed the amount the person or institution customarily charges for like services or supplies. In determining whether a charge for a particular service, treatment, or otherwise is reasonable, consideration may be given to evidence of usual and customary charges and payments accepted by the provider involved in the dispute, reimbursement levels in the community and various federal and state medical fee schedules applicable to motor vehicle and other insurance coverages, and other

---

[4] The applicable fee schedule under Medicare is the fee schedule in effect on March 1 of the service year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule applies to services, supplies, or care rendered during that service year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.  For purposes of this subparagraph, the term "service year" means the period from March 1 through the end of February of the following year.

information relevant to the reasonableness of the reimbursement for the service, treatment, or supply.

1. *The insurer may limit reimbursement to 80 percent of the following schedule of maximum charges:*

    f. *For all other medical services, supplies, and care, 200 percent of the allowable amount under:*

        (I)   *The participating physicians fee schedule of Medicare Part B,* except as provided in sub-sub-subparagraphs (II) and (III).

## Defendant's Improper Deductible Interpretation of § 627.739(2), Florida Statutes (2014)

26.   Florida Statute Section 627.739 is the statutory provision related to the proper application of the deductible which states, in pertinent part:

Insurers shall offer to each applicant and to each policyholder, upon the renewal of an existing policy, deductibles, in amounts of $250, $500, and $1,000. *The deductible amount must be applied to 100 percent of the expenses and losses* described in s. 627.736. *After the deductible is met*, each insured is eligible to receive up to $10,000 in total benefits described in s.627.736(1).  However, this subsection shall not be applied to reduce the amount of any benefits received in accordance with s. 627.736(1)(c).

*See* § 627.739(2), Fla. Stat. (2014) (emphasis added).

27.   The plain language of section 627.739(2) requires that the deductible be applied to 100% of the expenses and losses before the application of any reduction methodologies in section 627.736(5)1.f.(I).

28.   Pursuant to Florida law an insurance company cannot provide lesser coverage than as required under the statute, but can provide greater coverage.

29.   Plaintiff, on behalf of itself and all others similarly situated, alleges that Defendant uniformly and systematically improperly applied the deductible to reduce the payments of claims submitted by Plaintiff and Class members for medical services rendered to its insureds.

30.     The resulting common injury that Defendant caused Plaintiff and Class members stems from Defendant's misinterpretation of Florida Statute Section 627.739(2) and the improper application of the deductible after applying the statutory reimbursement limitations provided in section 627.736(5)(a)1.f.(I).

31.     Fla. Stat. § 627.736(5)(a)(l)-(3) (2014) states, in part:

1.  The insurer may limit reimbursement to 80 percent of the following schedule of maximum charges:
a.  For emergency transport and treatment by providers licensed under chapter 401, 200 percent of Medicare.
b.  For emergency services and care provided by a hospital licensed under chapter 395, 75 percent of the hospital's usual and customary charges.
c.  For emergency services and care as defined by s. 395.002 provided in a facility licensed under chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.
d.  For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services.
e.  For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.
f.  **For all other medical services, supplies, and care, 200 percent of the allowable amount under:**
(I)   **The participating physicians fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).**
(II)  Medicare Part B, in the case of services, supplies, and care provided by
        ambulatory surgical centers and clinical laboratories.
(III) The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee
        schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies, or care is not reimbursable under Medicare Part B, as provided in this sub-subparagraph, the insurer may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by the insurer.

2.  For purposes of subparagraph 1., the applicable fee schedule or payment

8

limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

3. Subparagraph 1. does not allow the insurer to apply any limitation on the number of treatments or other utilization limits that apply under Medicare or workers' compensation. An insurer that applies the allowable payment limitations of subparagraph 1. must reimburse a provider who lawfully provided care or treatment under the scope of his or her license, regardless of whether such provider is entitled to reimbursement under Medicare due to restrictions or limitations on the types or discipline of health care providers who may be reimbursed for particular procedures or procedure codes. However, subparagraph 1. does not prohibit an insurer from using the Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, to determine the appropriate amount of reimbursement for medical services, supplies, or care if the coding policy or payment methodology does not constitute a utilization limit.

(Emphasis added)

32.     The PIP statute clearly requires an insurer to first apply the insured's deductible to 100% of the total charges billed for medical services, and then apply the statutory reimbursement limitations for payment of medical services, supplies, and care. Instead of following the statutory language of the PIP statute, Defendant has systematically and improperly been ***first*** applying the statutory reimbursement limitations ***and then*** subtracting the deductible from that reduced amount to arrive at the benefit amount owed to the insured. Defendant's systemic and improper practice is in direct violation of the PIP Statute.

33.     The terms of Defendant's insurance policies and the PIP Statute equally apply to Defendant's insureds and assignees of its policies, including Plaintiff and all members of the Class.

## CLASS ACTION ALLEGATIONS

34.     Pursuant to Fed. R. Civ. P. 23(a), (b)(1), (2), and/or (3), Plaintiff, together with such other members of the Class that may join this action as class representatives, hereby brings Counts I through III of this action on its own behalf and on behalf of all those similarly situated who were underpaid by the Defendant based, in whole or in part, on its unlawful interpretation and/or application of its insureds deductibles pursuant to section 627.739(2), Florida Statutes (2014), and the Medicare Part B Participating Provider Fee Schedule.

35.     As used herein, the Class Period is January 23, 2013 through the present and the Class consists of and is defined as follows:

> All Florida healthcare providers who (a) are/were the assigns or assignees of covered insureds under an automobile insurance policy issued by STATE FARM as described in Fla. Stat. § 627.736(1)(a); and (b) who at any time during the Class Period submitted bills to STATE FARM for payment of PIP benefits for medical services; and (c) STATE FARM reduced the reimbursement of such medical services by improperly applying the statutory reimbursement limitations first and then subtracting the deductible from that amount.

> Excluded from the Class are persons and/or entities who timely opt-out of this proceeding using the correct protocol for opting-out that will be formally established by this Court; the Defendant; any subsidiary or affiliate of the Defendant; the directors, officers and employees of the Defendant or its subsidiaries or affiliates; any entity in which any excluded person has a controlling interest; the legal representatives, heirs, successors and assigns of any excluded person; and member of the federal judiciary including the judge assigned to this case along with any persons within the third degree of consanguinity to such judge.

36.     Plaintiff and the members of the Class reserve the right to amend the Class definition as discovery proceeds and to conform to the evidence.

37.     Numerosity (Rule 23(a)(1)).   While the exact number of members in the Class is unknown at this time, Plaintiff alleges that there are thousands of Florida residents who are/were insured through policies issued by Defendant who assigned their benefits to Florida healthcare providers during the Class Period.  Moreover, Plaintiff alleges that there are thousands of Florida

healthcare providers who submitted claims to Defendant for medical services and that STATE FARM has had a general business practice of reducing the payment of claims by improperly applying the statutory reimbursement limitations of 627.736(5)(a)1.f.(I) first and then subtracting the deductible from that reduced amount.  As a result, the number of Class members is so numerous that separate joinder of each member is impracticable.

38.     The Class members will be easily discovered through STATE FARM's records which will disclose all claims information related to the improper application of the deductible, including each Class member and claim for which STATE FARM improperly reduced the payment.  This data will enable the Plaintiff to easily determine common action and liability as well as damages for all putative Class members' claims.

39.     <u>Commonality (Rule 23(a)(2))</u>.  This action poses questions of law and fact that are common to and affect the rights of all Class members.  Such questions of law and fact common to the Class include the following:

    a.  Whether STATE FARM has been improperly applying the statutory reimbursement limitations first and then subtracting the deductible from that amount;

    b.  Whether STATE FARM breached its insurance policy(ies);

    c.  Whether STATE FARM has improperly interpreted and/or applied section 627.739(2), Florida Statutes (2014);

    d.  Whether the Plaintiff and the Class are entitled to declaratory relief to determine the parties' respective rights and obligations concerning the provisions of STATE FARM's policies;

    e.  Whether the Plaintiff and the Class are entitled to injunctive relief to require STATE FARM to cease and desist from continuing to violate Florida Statute Section 627.739(2) and its own insurance policies;

    f.  Whether the Plaintiff and the Class are entitled to compensatory relief for the amount of medical benefit claims STATE FARM failed to pay in violation of Florida Statute Section 627.739(2) and its own insurance policies, plus prejudgment interest;

11

g.  Whether the Plaintiff and the Class are entitled to information notice to inform them that STATE FARM has not properly paid claims that were submitted for payment.

40.     Typicality (Rule 23(a)(3)).  Based upon the facts and legal claims or questions of law set forth herein, Plaintiff's claims are typical of the claims of each Class in that, in proving its claims, Plaintiff will simultaneously prove the claims of all Class members.  There is a sufficient relationship between the injuries suffered by Plaintiff and the members of the Class as a result of Defendant's conduct, and Plaintiff has no interest adverse to the interests of other Class members. Plaintiff and each Class member is a health care provider who is an assignee of Defendant's standardized automobile insurance policy, whose claims submitted pursuant to Defendant's PIP policy benefits have been underpaid based solely on the Defendant's improper reduction of their payments in violation of Florida Statute Sections 627.736 and 627.739, and its own insurance policy.

41.     Further, other individual plaintiffs may elect to join this action upon such grounds as the Court may set forth and these individual plaintiffs will likewise have issues that are common to those of all other Class members.

42.     Adequacy (Rule 23(a)(4)). The Plaintiff is a health care provider doing business in Florida that has no conflicts of interest and will fairly and adequately represent and protect the interests of the Class.  Plaintiff is aware of its responsibility as Class Representative and has retained undersigned counsel who are competent and have more than twenty (20) years of experience prosecuting Class actions.  As a result, the undersigned attorneys are qualified and experienced in Class action litigation and will adequately protect the interests of the Class.

43.     Superiority.  A Class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all of the members of the Class is

impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

      A. Absent a Class, the members of the Class will continue to suffer damages and STATE FARM's unlawful conduct will continue without remedy;

      B. Given the size of individual Class members' claims, few, if any, Class members could afford to or would seek legal redress individually for the wrongs STATE FARM has committed against them, and absent Class members have no substantial interest in individually controlling the prosecution of individual actions;

      C. When the liability of STATE FARM has been adjudicated, claims of all Class members can be administered efficiently and/or determined uniformly by the Court; and

      D. The action presents no difficulty that would impede its management by the Court as a Class action which is the best available means by which Plaintiff and the members of the Class can seek redress for the harm caused to them by STATE FARM.

44.   Rule 23(b)(2).  Under Counts I and II below, Plaintiff brings this Class action pursuant to Fed. R. Civ. P. 23(b)(2) on the grounds that STATE FARM's actions or omissions as alleged herein, are generally applicable to all members of the Class thereby making declaratory relief concerning the Class as a whole particularly appropriate. STATE FARM systematically and routinely improperly interpreted and/or applied its policies and Florida Statute Sections 627.736 and 627.739, adversely affecting Plaintiff and each Class member.

45.   Because Plaintiff seeks declaratory relief for Class members under Rule 23(b)(2), the prosecution of separate declaratory actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the STATE FARM.  Further, adjudications with respect to individual Class members would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to the adjudication and may impair and impede their ability to protect their interests.

13

46.     <u>Rule 23 (b)(3)</u>.  With respect to Count III, Plaintiff brings this Class action pursuant to Fed. R. Civ. P. 23(b)(3) on the grounds that STATE FARM's actions in violation of Florida Statute Sections 627.736 and 627.739 and its own insurance policies because of its failure to pay the full amount due to Class members by improperly applying the statutory reimbursement limitations first and then subtracting the deductible from that reduced amount, make STATE FARM liable to Plaintiff and all members of the Class for their unpaid benefits.

**COUNT I**
**CLASS ACTION FOR DECLARATORY JUDGMENT**

47.     Plaintiff and the members of the Class repeat and reallege each and every allegation contained in paragraphs 1 through 46 above as if the same were fully alleged herein.

48.     Pursuant to the provisions of 28 U.S.C. § 2201, this case involves an actual controversy within the jurisdiction of this Court and Plaintiff and the members of the Class ask the Court to declare the rights of the Plaintiff and all Class members.

49.     In pertinent part, Fla. Stat. § 627.736(10) states the following:

> DEMAND LETTER.-
>
> (a)  As a condition precedent to filing any action for <u>benefits</u> under this section, the insurer must be provided with written notice of an intent to initiate litigation. Such notice may not be sent until the claim is overdue, including any additional time the insurer has to pay the claim pursuant to paragraph (4)(b).

(Emphasis added).   Because Count I only seeks declaratory relief, it is not an "action for benefits" pursuant to § 627.736, and a pre-suit demand letter is not a condition precedent to the initiation of this action.

50.     During the Class period, Plaintiff and all Class members have submitted claims for PIP benefits to STATE FARM for payment under STATE FARM's standardized automobile insurance policy.

51.     Defendant entered into valid insurance policies with its insureds whose benefits were properly assigned to Plaintiff and Class members.  Defendant's insurance policies were written by the Defendant, and provided PIP benefits including the proper application of the relevant deductible pursuant to Florida Statute Section 627.739(2).

52.     Plaintiff alleges that the correct interpretation of section 627.739(2) is that, when calculating the amount of PIP benefits due, the insureds' deductible is to be subtracted from the total medical charges before applying the statutory reimbursement limitations provided in section 627.736(5)(a)1.f.(I), Florida Statutes (2014).[5]

53.     Despite the plain language of the PIP Statute, the Defendant has continuously and systematically violated the PIP Statute by improperly applying the statutory reimbursement limitations first and then subtracting the deductible from that reduced amount for all claims submitted by Plaintiff and Class members.

54.     Plaintiff and Class members allege that based upon the plain language of the PIP Statute, the Defendant was not lawfully authorized to reduce the payment of claims by improperly applying the deductible.  Despite the express and unambiguous terms of the PIP Statute, the Defendant continuously and systematically reduces the payment of all claims submitted by Plaintiff and Class members for medical services.

55.     Accordingly, Plaintiff and Class members are in doubt about their rights, and a bona fide present controversy exists between the Plaintiff and Class members, and the Defendant concerning the proper interpretation and/or application of the PIP Statute and the language of Defendant's insurance policy, and the parties' respective rights and obligations thereunder, with respect to issues which include but are not limited to whether, during the Class Period, the

---

[5] *See Progressive Select Ins. Co. v. Fla. Hosp. Med. Ctr.,* 42 Fla. L. Weekly D2455 (Fla. 5th DCA November 17, 2017).

Defendant has been lawfully authorized to reduce payments made to Class members as a result of the improper application of the deductible.

56.     The rights, status, or other equitable or legal relations of the parties are affected by Fla. Stat. §§ 627.736 and 627.739.  Accordingly, pursuant to 28 U.S.C. § 2201, the Plaintiff and Class members may obtain a declaration of rights, status, or other equitable or legal relations thereunder.

57.     Plaintiff and Class members allege the foregoing claim for declaratory relief pursuant to Fed. R. Civ. P. 8(d)(3).

58.     The Plaintiff has retained the undersigned counsel to prosecute this action and is entitled to recover its reasonable attorneys' fees and costs pursuant to Fla. Stat. § 627.428.

<u>**COUNT II**</u>
<u>**CLASS ACTION FOR INJUNCTIVE RELIEF**</u>

59.     Plaintiff and the members of the Class repeat and reallege each and every allegation contained in paragraphs 1 through 46 above as if the same were fully alleged herein.

60.     This is a class action for injunctive relief brought by the Plaintiff and the members of the Class against the Defendant.

61.     In pertinent part, Fla. Stat. § 627.736(10) states the following:

DEMAND LETTER.-

(a) As a condition precedent to filing any action for <u>benefits</u> under this section, the insurer must be provided with written notice of an intent to initiate litigation. Such notice may not be sent until the claim is overdue, including any additional time the insurer has to pay the claim pursuant to paragraph (4)(b).

(Emphasis added).

62.     Because Count II only seeks injunctive relief, it is not an "action for benefits" pursuant Florida Statute Section 627.736, and a pre-suit demand letter is not a condition precedent

to the initiation of this action.

63.     Defendant has violated Fla. Stat. § 627.739 as set forth above and, as a result, has violated the cognizable legal rights of the Plaintiff and Class members pursuant to the Defendant's insurance policies and the PIP Statute.

64.     Defendant continues to retain monies due and owing to Plaintiff and Class members for medical services provided by Plaintiff and Class members which should have been paid by Defendant from its insureds' PIP benefits.

65.     The Plaintiff and Class members have suffered and will continue to suffer irreparable injury if the Defendant is permitted to continue its violation of Florida Statute Section 627.739 as a basis to unlawfully reduce its payments for valid bills for medical services provided to the Defendant's PIP insureds.  Examples of such irreparable injury include but are not limited to the following:

    (a) Absent injunctive relief requiring the Defendant to cease and desist from its continuing wrongful conduct, the Plaintiff and Class members are left in the untenable position of having to address the Defendant's continuing and ongoing wrongs with a multiplicity of lawsuits, in the various different county courts across the State of Florida, with the risk of suffering inconsistent and varying results.

    (b) The PIP statute requires that, when calculating the amount of PIP benefits due, the deductible is to be subtracted from the total medical charges before applying the statutory reimbursement limitations provided in section 627.736(5)(a)1.f.(I), Florida Statutes (2014), and Defendant should not be permitted to reduce payment of claims submitted to it by improperly applying the statutory reimbursement limitations first and then subtracting the deductible from that reduced amount.

    (c) The Defendant's continuing and ongoing unlawful conduct places its own PIP insureds at risk that health care providers will refuse to treat them without receiving full payment in advance of receiving health care services needed to properly treat and/or diagnose their health condition, and this will lead to incalculable or unascertainable losses to third parties.

66.     The Plaintiff and Class members have a clear legal right to seek an injunction requiring that the Defendant cease and desist from continuing to violate Fla. Stat. § 627.739 by

unlawfully reducing payment of valid bills for medical services provided to the Defendant's PIP insureds.

67. The language of the PIP Statute is clear and unambiguous and, as a result, Plaintiff's and Class members' claims are meritorious and have a substantial likelihood of success. Despite the plain and statutory language, Defendant has violated and continues to violate the PIP Statute to the detriment of the Plaintiff and Class members.

68. The Plaintiff and the Class members have no other adequate remedy at law by virtue of the Defendant's course of conduct.

69. Irreparable injury has been suffered and will continue to be suffered unless a permanent injunction is issued to prevent the Defendant from continuing to unlawfully limit Plaintiff and the Class members PIP benefits under their insurance policies with the Defendant in direct violation of Fla. Stat. § 627.739.

70. Any potential injury to Defendant attributable to an injunction providing that it must follow the clear and unambiguous language of Fla. Stat. § 627.739 is outweighed by the injury that Plaintiff, Class members and the public will suffer if such injunction is not issued, and such injunction would not be adverse to the public interest.

71. Plaintiff and Class members allege the foregoing claim for injunctive relief pursuant to Fed. R. Civ. P. 8(d)(3).

72. The Plaintiff has retained the undersigned counsel to prosecute this action and is entitled to the recovery of its reasonable attorneys' fees and costs pursuant to § 627.428, Florida Statutes.

<u>COUNT III</u>
<u>CLASS ACTION FOR BREACH OF CONTRACT</u>
<u>(UNPAID PIP BENEFITS)</u>

73.     Plaintiff and the members of the Class repeat and reallege each and every allegation

contained in paragraphs 1 through 46 above as if fully alleged herein.

74.     Plaintiff and Class members allege breach of contract claims against the Defendant

for unpaid PIP benefits in violation of Fla. Stat. § 627.739, and Defendant's own insurance

policies.

75.     In pertinent part, Fla. Stat. § 627.736(10) states the following:

DEMAND LETTER.-

(a) As a condition precedent to filing any action for <u>benefits</u> under this
    section, the insurer must be provided with written notice of an intent to
    initiate litigation. Such notice may not be sent until the claim is overdue,
    including any additional time the insurer has to pay the claim pursuant
    to paragraph (4)(b).

(Emphasis added).

76.     The Plaintiff and the Class members satisfied the pre-suit requirements of Fla. Stat.

§ 627.736(10) because Plaintiff and the Class members sent Defendant pre-suit demand letters

prior to instituting this action.

77.     Despite receiving the Plaintiff and Class members' demand letters, Defendant

failed to timely pay the appropriate amount of PIP benefits required by §§ 627.736 and 627.739.

78.     As a result of Defendant's failure to timely pay the appropriate amount of PIP

benefits, Defendant violated Fla. Stat. § 627.739(2), and breached the Plaintiff's and Class

members' PIP insurance policies.

79.     As a direct and proximate result of Defendant's acts and/or omissions, Plaintiff and

Class members have suffered damages.

80.     Plaintiff and the members of Class hereby demand that the amount of benefits

19

necessary to satisfy their claims be placed in escrow during the pendency of this litigation in order to insure that such benefits are not exhausted.

81.     The Plaintiff has retained the undersigned counsel to prosecute this action and is entitled to the recovery of its reasonable attorneys' fees and costs pursuant to § 627.428, Florida Statutes.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, individually and on behalf of all others similarly situated, pursuant to Chapter 86, Florida Statutes, and 28 U.S.C. § 2201 hereby respectfully requests this Honorable Court to award the following relief against the Defendant:

(a) Issue an Order certifying that Counts I through III are properly maintainable as a Class action under Fed. R. Civ. P. 23(b)(l), (2), and/or (3) and appoint the Plaintiff to represent the Class defined herein, and appoint the undersigned law firms as Class Counsel;

(b) Issue an Order granting a declaratory judgment under Counts I, declaring the parties' respective rights and obligations under Fla. Stat. §§ 627.736 and 627.739(2), and the Defendant's PIP insurance policies;

(c) Issue an Order granting a temporary and/or permanent injunction Count II requiring the Defendant to cease and desist from continuing to utilize and rely upon an unlawful application of sections 627.736(5)(a)1.f.(I), and 627.739(2), Florida Statutes (2014) in the payment of claims submitted by healthcare providers, which application is in violation of the PIP Statute and Defendant's insurance policies;

(d) Issue an Order awarding Plaintiff's and the Class' damages representing full payment of their PIP benefits as required under §§ 627.736 and 627.739, including prejudgment interest and interest on all benefits that were not timely paid;

(e) Issue an Order requiring the Defendant to pay the Plaintiff and the Class their reasonable attorneys' fees and costs pursuant to Florida Statutes §§ 627.428 and/or § 627.736(8);

(f) Issue an Order requiring Defendant provide notice to all Class members regarding the rulings, findings, and declarations in this action and their legal rights with respect to STATE FARM's improper reduction of their PIP benefits and violation of their policy and the PIP Statute; and

grant such other relief as this Honorable Court deems appropriate.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, requests trial by jury on all issues so triable.

Dated: January 23, 2018                    Respectfully submitted,

/s/ *Tod Aronovitz*
Tod Aronovitz (FBN 186430)
ta@aonovitzlaw.com
Barbara Perez (FBN 989304)
bp@aronovitzlaw.com
**ARONOVITZ LAW**
2 South Biscayne Boulevard
One Biscayne Tower, Suite 3700
Miami, FL 33131
Tel: 305-372-2772
Fax: 305-397-1886

Theophilos Poulopoulos (FBN 98070)
theo@injuredinflorida.com
**SCHILLER, KESSLER & GOMEZ, PLC**
7501 W. Oakland Park Boulevard
Suite 201
Ft. Lauderdale, FL 33319
Tel: 954-933-3000
Fax: 954-667-5805